# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| VICKIE LYNETTE DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-16-431-SPS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Vickie Lynette Duncan requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 21, 1961, and was fifty-four years old at the time of the most recent administrative hearing (Tr. 218). She completed tenth grade, and has worked as a driver, convenience store manager, sales clerk, cashier II, and routine office clerk (Tr. 247, 517). The claimant alleges she has been unable to work since December 25, 2009, due to bipolar disorder, manic depressive disorder, emphysema, chronic pulmonary obstructive disorder ("COPD"), acid reflux, and anxiety (Tr. 247).[3]

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 15, 2011 (Tr. 218-27). Her applications were denied. ALJ Bernard Porter conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated January 24, 2013 (Tr. 17-33). The Appeals Council denied review, but this Court granted the Commissioner's Motion to Reverse and Remand for Further Administrative Proceedings Pursuant to Sentence Four of the Social Security Act in Case No. CIV-14-451-FHS-KEW,

---

[3] Based on a written decision dated February 15, 2011, that the claimant did not appeal, the ALJ found the relevant period began on February 16, 2011 (Tr. 112-23, 443).

and remanded the case to the ALJ on June 3, 2015 (Tr. 738-40). While her first applications were pending, the claimant filed new applications on August 21, 2014, and on August 22, 2014, which were also denied (Tr. 880-900). Having received this Court's June 2015 remand, the Appeals Council consolidated the claimant's claims and remanded the case to an ALJ on June 12, 2015 (Tr. 742-45). On remand, ALJ Deirdre O. Dexter held an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 29, 2016 (Tr. 443-66). The claimant did not file written exceptions to the Appeals Council challenging the ALJ's July 2016 decision, and the Appeals Council did not assume jurisdiction, so the ALJ's July 2016 decision is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d).

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with occasional climbing ramps and stairs, stooping, and crouching, and never climbing ropes, ladders, or scaffolds, kneeling, or crawling (Tr. 454). The ALJ further found the claimant should never be exposed to unprotected heights or moving mechanical parts, and should not do a job involving concentrated exposure to dust, odors, fumes or other pulmonary irritants, extreme heat, extreme cold, humidity, or wetness (Tr. 454). As to the claimant's psychologically based limitations, the ALJ found she could understand, remember, and carry out detailed but uninvolved instructions, make simple work related decisions, interact occasionally with supervisors as required to receive work instructions, work in proximity to co-workers, but should have no more than occasional

direct work interaction with them, and could never interact with the general public (Tr. 454). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, inspector packer, electrical accessory assembler, and small product assembler (Tr. 464-66).

## Review

The claimant contends that the ALJ erred by failing to develop the record regarding her COPD through an additional pulmonary function study. In support, she specifically asserts that Program Operations Manual System ("POMS") DI 24540.001, issued by the Social Security Administration, required additional pulmonary function testing, and that the ALJ's reasons for not obtaining a second study were insufficient and factually inaccurate. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of COPD, degenerative joint disease of the bilateral knees, modest degenerative changes in the bilateral hips, hypertension, obesity, posttraumatic stress disorder, bipolar disorder, and substance abuse disorder (Tr. 446). The medical evidence as to the claimant's breathing impairment reveals that providers at Mercy Health Clinic consistently prescribed her a bronchodilator between December 2009 and November 2014 (Tr. 1208-225, 1260). A nurse practitioner at Mercy Health Clinic diagnosed the claimant with COPD on June 10, 2010, and another provider treated the claimant for acute bronchitis three times (Tr. 1232-33, 1242-47).

On January 23, 2012, the claimant presented to the McAlester Regional Health Center ("MRHC") Emergency Department for swelling in her legs (Tr. 1052-55). She had

normal breath sounds on physical examination (Tr. 1053). A chest x-ray performed the following day revealed mild diffuse interstitial accentuation likely related to early pulmonary edema or chronic changes versus atypical infection (Tr. 1057). On March 1, 2012, the claimant presented to the MRHC Emergency Department for chest pain (Tr. 1064-70). A respiratory examination showed normal breath sounds, no chest tenderness, and no respiratory distress (Tr. 1065-67). A chest x-ray taken that day revealed borderline cardiomegaly, no consolidation, and no acute change when compared to the January 2012 chest x-ray (Tr. 1073). The claimant underwent a stress test the following day, the results of which were normal (Tr. 1118).

The claimant established care with Dr. Nancy Weddle on October 8, 2013 (Tr. 1253-55). Her respiratory examination revealed rhonchi that cleared with cough, unlabored breathing, and good effort (Tr. 1254). She recommended that the claimant stop smoking, and provided her with smoking education handouts (Tr. 1255).

On January 4, 2016, the claimant presented to the MRHC Emergency Department with shortness of breath, and reported that she ran out of inhalers two days earlier (Tr. 1404-12). On physical examination, Dr. Karen Siren found decreased breath sounds, accessory muscle use, and wheezing (Tr. 1406). The claimant's blood oxygen saturation level was ninety upon admission and ninety-five at discharge, but ranged from eighty-seven to ninety-seven (Tr. 1408). A chest x-ray taken that day revealed ordinary inflation, borderline cardiomegaly, no appreciable acute chest process, and was similar to the March 2012 chest x-ray (Tr. 1410). Dr. Siren consulted with Dr. Patel, who stated that the claimant's hypoxia was tolerable, and that inpatient observation was not warranted

(Tr. 1410). Dr. Siren diagnosed the claimant with COPD with acute exacerbation and atypical pneumonia (Tr. 1410). At a follow-up appointment on January 8, 2016, the claimant reported feeling better regarding her pneumonia, but that she still had a non-productive cough (Tr. 1427). Dr. Gambrill's respiratory examination was normal, and the claimant's blood oxygen saturation level was ninety-three (Tr. 1429). On February 17, 2016, the claimant reported feeling worse, but that a recently prescribed inhaler was helpful (Tr. 1449). Dr. Gambrill's respiratory exam indicated diffuse auscultation, and the claimant's blood oxygen saturation was ninety-three (Tr. 1451). She diagnosed the claimant with COPD with acute exacerbation (Tr. 1451). Follow-up appointments in April 2016 were normal, and the claimant denied cough, dyspnea, and wheezing (Tr. 1435-44). A chest x-ray taken on April 26, 2016, revealed a normal-sized heart; no consolidation, effusion, or pneumothorax; and no evidence of active cardiopulmonary disease (Tr. 1453).

A total of three consultative physical examinations have been performed on the claimant (Tr. 323-31, 1323-30, 1354-61). On May 24, 2010, Dr. Adel Malati found that the claimant's chest moved equally and regularly with respiration, and that her lungs were clear (Tr. 1356). A pulmonary function study conducted the same day, indicated that the claimant's pre-bronchodilator forced expiratory volume ("FEV1") values were .94, 1.51, and 1.99, and that her post-bronchodilator FEV1 values were 1.79, 2.40, and 2.04 (Tr. 1363). Dr. Malati's clinical impression included, *inter alia*, COPD and tobacco abuse (Tr. 1357). On July 27, 2011, Dr. Ronald Schatzman found that the claimant's chest was symmetrical with equal expansion bilaterally, her lungs were clear to auscultation, and she had no rales, rhonchi, or wheezes (Tr. 325). His impression included, *inter alia*, COPD,

emphysema, and tobacco abuse (Tr. 326). On January 17, 2015, Dr. James Gentry found that the claimant's chest was symmetrical with equal expansion bilaterally, her lungs were clear to auscultation, and she had no rales, rhonchi, or wheezes (Tr. 1330). Dr. Gentry made no assessment specifically as to the claimant's lungs or breathing, but indicated that she was able to walk and stand for "periods of time without problem" (Tr. 1330).

A state agency physician reviewed the record and completed a physical RFC assessment on September 1, 2011 (Tr. 350-57). He indicated that the claimant's primary diagnosis was COPD, and that she could perform light work with the environmental limitation of avoiding even moderate exposure to fumes, odors, dusts, gases, and poor ventilation, referencing Dr. Schatzman's July 2011 consultative exam as support (Tr. 350-57). His opinion was affirmed on November 3, 2011, with an additional reference to the May 2010 pulmonary function study as support (Tr. 359). The state agency physician's November 2011 opinion was affirmed on May 28, 2012, with additional references to the claimant's January and March 2012 MRHC emergent visits as support (Tr. 420-21). After the claimant's duplicate August 2014 applications, a state agency physician again reviewed the record and completed a physical RFC assessment on March 30, 2015 (Tr. 730-32). He did not include any respiratory system impairments in his assessment, but referenced Dr. Schatzman's July 2011 normal chest examination as support for his opinion that the claimant could perform the full range of light work (Tr. 730-31).

In her written opinion, the ALJ thoroughly discussed the claimant's testimony, as well as the evidence in the record. In denying the claimant's request for an additional pulmonary function study, the ALJ concluded that the record was sufficiently developed

regarding her COPD (Tr. 451). In reaching such conclusion, the ALJ found: (i) the highest pre *and* post-bronchodilator FEV1 results from the May 2010 pulmonary function study were "quite above" the listing level requirements, and (ii) the medical evidence contained no findings or complaints to suggest worsening COPD symptoms (Tr. 453). She also noted that the claimant's only episode of emergent treatment for COPD occurred after she was without medication for two days and did not require inpatient observation, the claimant continued to smoke, and an April 2016 chest x-ray showed no evidence of active cardiopulmonary disease (Tr. 452). The ALJ then gave the state agency physicians' opinions significant weight, but modified the claimant's RFC to semi-skilled work with additional limitations based on her subjective complaints (Tr. 461).

The claimant's argument, broadly stated, is that the ALJ failed to develop the record regarding her COPD, particularly that she should have ordered another consultative examination including a pulmonary function test. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The ALJ nevertheless has "broad latitude" in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a

consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. In assessing the claimant's RFC, the ALJ relied on objective medical evidence that included the May 2010 pulmonary function study, the state agency physicians' opinions, and the claimant's own subjective statements. Furthermore, as set forth above, the ALJ concluded that the record was fully developed as to the claimant's COPD and explained her reasons, which are supported by the record. The Court is satisfied that the ALJ adequately performed her duty here.

As part of her contention that the ALJ failed to develop the record, the claimant more specifically asserts that an additional pulmonary function study was required pursuant to POMS DI 24540.001. At the time of the ALJ's decision, POMS DI 24540.001 provided guidance on pulmonary function studies when evaluating whether a claimant was presumptively disabled under 20 C.F.R., Part 404, Subpt. P. App. 1, §§ 3.02, 3.04 (the "Listings"). It stated that a pulmonary function study "should be purchased when there is a clinical basis for a pulmonary impairment and an evaluation of all the evidence (e.g. history, physical examination, chest x-ray) does not permit a favorable decision." POMS DI 24540.001(A)(2). Notably, that particular section has been removed from the POMS since the ALJ's decision. More importantly, the issue here is not whether the ALJ should have ordered a pulmonary function study in the first instance, it is whether the ALJ should have ordered an *additional* pulmonary function study. The record does contain a pulmonary function study, and as discussed above, the ALJ did not abuse her broad latitude by declining to order a second study.

Finally, the claimant asserts that the ALJ's reasons for not ordering a second pulmonary function study were insufficient and factually inaccurate. As to the ALJ's finding that the claimant's pulmonary function study results were "quite above the requirements needed to meet or equal listing level," she claims that her two lowest pre-bronchodilator FEV1 values of .95 and 1.51 meet the requirements of Listing 3.02 (Chronic Pulmonary Insufficiency). To meet Listing 3.02, a claimant must show an FEV1 value below a particular threshold that corresponds to her height. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 3.02(A). Contrary to the claimant's assertion, the regulations require that the *highest* FEV1 value from at least three trials be utilized for listing evaluation purposes. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 § 3.00(E). In an abundance of caution, the ALJ noted that the claimant's *highest* pre-bronchodilator FEV1 value was 1.99 *and* her *highest* post-bronchodilator FEV1 value was 2.40, and then correctly determined that *both* values were above the Listing requirement of 1.25 (Tr. 451). Accordingly, the ALJ made no error in evaluating whether the claimant met Listing 3.02.

As to the ALJ's finding that the medical evidence contained no evidence or complaints to suggest worsening symptoms, the claimant suggests instead that the medical records reflect that her COPD had deteriorated. However, the ALJ specifically noted every relevant medical record available in the administrative record, and *still concluded* that she could work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine

RFC within that category.' "), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. Essentially, the claimant asks the Court to reweigh the evidence in the record, which the Court cannot do. *See Casias*, 933 F.2d at 800.

## Conclusion

In summary, the Court FINDS that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby AFFIRMED.

**DATED** this 13th day of March, 2018.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**